UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| SAMUEL BRINSON, ) | |
| ) | |
| ) | No. 1:03-cr-81/1:09-cv-11 |
| v. ) | *Judge Edgar* |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |

**MEMORANDUM**

Petitioner Samuel Brinson ("Brinson") has filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. Brinson alleges counsel was ineffective and challenges the Court's authority to sentence him (Criminal Court File No. 62).[1]

After reviewing the record, the Court concludes it is able to resolve Brinson's claims in his amended § 2255 motion from the record. The evidence of record conclusively demonstrates Brinson is not entitled to evidentiary hearing or any relief under 28 U.S.C. § 2255. Thus, for the following reasons, Brinson's § 2255 motion is **DENIED**, and this action will be **DISMISSED** (Criminal Court File No. 62).

**I.     28 U.S.C. § 2255 – Standard of Review**

Section 2255 of Title 28 of the United States Code permits a prisoner in custody under sentence of a federal court to move the court that imposed the sentence to vacate, correct, or set aside that sentence, on the grounds that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or

---

[1] Each document will be identified by the Court File Number assigned to it in the underlying criminal case.

1

that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . ." 28 U.S.C. § 2255.

This Court has jurisdiction to adjudicate this matter under 28 U.S.C. § 1331. The movant has the burden of establishing any claim asserted in the motion by a preponderance of the evidence. *See Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006). Thus, when a defendant files a § 2255 motion, he must set forth facts which entitle him to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961). "Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing." *Green*, 454 F.2d at 53; *O'Malley*, 285 F.2d at 735. A motion that merely states general conclusions of law without substantiating allegations with facts is without legal merit. *Loum v. Underwood,* 262 F.2d 866, 867 (6th Cir. 1959); *United States v. Johnson*, 940 F. Supp. 167, 171 (W.D. Tenn. 1996).

In order to obtain relief under § 2255 when a constitutional error is alleged, the record must reflect a constitutional error of such magnitude that it had a substantial and injurious effect or influence on the proceedings. *See Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993); *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999). In order to prevail on a § 2255 motion alleging non-constitutional error, a petitioner must show a "fundamental defect in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Riggs v. United States*, 209 F.3d 828, 831 (6th Cir.), *cert. denied*, 531 U.S. 884 (2000); *Gall v. United States*, 21 F.3d 107, 109 (6th Cir. 1994). Thus, "[a] motion brought under § 2255 must allege one of three bases as a threshold standard: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental

as to render the entire proceeding invalid." *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001), *cert. denied*, 535 U.S. 967 (2002).

## II.     Procedural Background

On March 25, 2003, Brinson was charged in a three-count indictment with attempting to rob a restaurant engaged in interstate commerce in violation of 18 U.S.C. § 1951; brandishing a firearm during the robbery in violation of 18 U.S.C. § 924(c)(1)(A)(ii); and being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1) (Criminal Court File No. 2).

On February 5, 2004, Brinson filed a notice of intent to plead guilty (Criminal Court File No. 20), but shortly thereafter, on February 10, 2004, his attorney filed a motion requesting substitution of counsel, stating Brinson indicated he no longer wished to plead guilty or be represented by his attorney (Criminal Court File No. 21). United States Magistrate Judge conducted a hearing on February 13, 2004, and denied Brinson's motion because "[t]he defendant did not seem certain whether he wanted counsel replaced and did not give the Court any reason for requesting replacement of counsel"(Criminal Court File No. 22).

On March 1, 2004, Brinson pleaded guilty to all three counts of the indictment without the benefit of a plea agreement (Criminal Court File No. 24). On August 6, 2004, Brinson was sentenced to 147 months imprisonment–concurrent 63 months on each of Counts One and Three to run consecutive with an 84 month sentence on Count Two (Criminal Court File Nos. 29, 30). Brinson pursued a direct appeal, and the Sixth Circuit affirmed his conviction, but remanded for sentencing in light of *United States v. Booker,* 543 U.S. 220 (2005).

On February 6, 2006, Brinson's attorney filed a second motion to withdraw, citing irreconcilable differences (Criminal Court File No. 39). On February 15, 2006, Magistrate Judge

Lee conducted a hearing, found the attorney-client relationship was now "irretrievably broken," and thus granted the motion (Criminal Court File Nos. 42, 43). New counsel was appointed and requested additional time to prepare for the resentencing, which the Court granted, scheduling the *Booker* resentencing for May 2, 2006 (Criminal Court File Nos. 44, 45).

On April 4, 2006, Brinson filed a motion requesting to withdraw his guilty plea and to continue or cancel the resentencing (Criminal Court File Nos. 46, 47). The Court denied Brinson's motions, finding it lacked jurisdiction because the case had been remanded for the limited purpose of resentencing following *Booker* (Criminal Court File No. 48).

Brinson's 147 month sentence of imprisonment was reimposed on May 2, 2006 (Criminal Court File No. 51). The Court explained that, during the original sentencing proceeding, it determined that it would have imposed the same sentence even if the Guidelines were advisory (Criminal Court File No. 54). Brinson appealed the denial of his motions to withdraw his plea and to cancel the resentencing (Criminal Court File No. 49). The Sixth Circuit affirmed the amended judgment on February 4, 2008 (Criminal Court File No. 59). On January 13, 2009, Brinson timely filed the instant § 2255 motion (Criminal Court File No. 62).

### III. Factual Background

The Offense Conduct is taken from the Presentence Investigation Report ("PSI"):

> 6. On January 9, 2003, an officer with the Chattanooga Police Department responded to a robbery call at Tiende Fuentes restaurant located on Main Street in Chattanooga, Tennessee. As the owner of the restaurant was closing the business for the evening, a black male entered the business brandishing a Savage Arms, Stevens Model 87, .22 caliber rifle and demanding money. The restaurant owner had already put the cash away for the day, so the register was empty. The suspect continued to demand money, so the restaurant owner handed over his wallet which contained $100. The suspect took the wallet and fled. During a police canvas of the neighborhood, a citizen advised police that he saw a man that he knew as "Sam" run with a rifle from the direction of the restaurant down the street and into a specific

> house. The officer went to that house and knocked on the door. Anetha Brinson answered the door and the defendant pretended to have been asleep before coming to the door. The officer told Mr. Brinson what was happening and informed him that he needed to talk to him. Mr. Brinson was detained and taken to the police station, where he was advised of his rights and waived them in writing. The defendant confessed and told the officer that the gun and wallet were at his house in the closet. The officer went back to the residence and recovered both, although Mr. Brinson stated that he had already given the $100 to a man that he owed for some crack.

(PSI, p. 5).

## IV. Analysis

Taking Brinson's § 2255 motion together with his supporting brief, his claims are somewhat confusing pled and intertwined. After discussing the law applicable to claims of ineffective assistance, the Court will address Brinson's individual claims.

### A. *Applicable Law*

The United States Supreme Court has established a two-part test for determining when assistance of counsel is constitutionally ineffective. *See Strickland v. Washington*, 466 U.S. 668, 686-87 (1984). The first part of the test requires the petitioner to show his counsel's errors were so egregious as to render counsel's performance constitutionally deficient – that is, outside the "wide range of professional assistance." *Id.*, at 689. The alleged errors or omissions must be evaluated from counsel's perspective at the time the conduct occurred and under the circumstances of the particular case. *Strickland*, 466 U.S. at 689. In effect, in order to show counsel's performance was deficient, petitioner must demonstrate "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.*, at 689.

Second, petitioner must show that his counsel's deficient performance so prejudiced him that the result of the proceeding is unreliable. *Id.*, at 687. A petitioner will satisfy the prejudice prong of the *Strickland* test if he shows that there is a reasonable probability, but for counsel's

unprofessional errors, the result of the proceeding would have been different. *Id.* at 694. In order to establish "prejudice" within the context of a guilty plea, a petitioner must show that there is a reasonable probability that, but for counsel's professional errors, he would not have pled guilty but would have insisted on standing trial. *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). To demonstrate a reasonable probability that he would have gone to trial, a defendant is required to present evidence apart from a lone assertion that but for counsel's error he would have pleaded not guilty and gone to trial. *See Parry v. Rosemeyer*, 64 F.3d 110, 118 (3rd Cir., 1995) ("A defendant alleging ineffective assistance of counsel in the guilty plea context must make more than a bare allegation that but for counsel's error he would have pleaded not guilty and gone to trial."), *cert. denied*, 516 U.S. 1058 (1996); *Armstead v. Scott*, 37 F.3d 202, 210 (5th Cir.1994), *cert. denied*, 514 U.S. 1071 (1995); *Key v. United States*, 806 F.2d 133, 139 (7th Cir. 1986) (merely making a claim that he would have pleaded differently and gone to trial is insufficient); *United States v. Campbell*, 778 F.2d 764, 768 (11th Cir. 1985) (bare allegation that defendant would not have pleaded guilty if her trial counsel had advised her properly is not sufficient to establish prejudice under *Strickland*).

Unless there is a likelihood of a successful defense to the charge, no alleged error by counsel is a basis for relief. *Hill v. Lockhart*, 474 U.S. at 59. Indeed, counsel is constitutionally ineffective only if a performance which fell below professional standards caused the defendant to lose what he "otherwise would probably have won." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

### *B.    Claims*

Brinson's claims are confusingly pled and difficult to decipher. In his § 2255 motion, the Court discerns that he raises the following claims: (1) His motion to replace counsel was erroneously denied; (2) he was coerced by counsel into pleading guilty based on counsel's advice that his

6

sentence would not be at the high end of the guideline range; (3) his plea of guilty was involuntary because he "had no understanding of what [he] was pleaing [sic] to or the results of his plea[;]" and (4) the court impermissibly imposed a sentence in excess of that permitted by his guilty plea and erred in exercising jurisdiction because his crime did not affect interstate commerce.

In his supporting memorandum, however, Brinson seemingly attacks his guilty plea on the basis it was involuntary because, although he has never denied he was engaged in the unalawful activity to which he pled guilty, he was denied a hearing on the duress issue as a result of counsel's deficient performance.[2] Brinson requests the Court to set aside his guilty pleas, appoint him new counsel, and grant him an evidentiary hearing to fully develop his argument.

Initially the Court observes that, contrary to the standard identified in *Hill v. Lockhart,* ("[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial"), Brinson has neither alleged nor demonstrated a reasonable probability that, but for his counsel's alleged errors and deficient performance, he would not have pleaded guilty and would have insisted on going to trial on the charges against him. Nevertheless, the Court will address each claim, to the extent possible, based on the limited factual information provided in the motion and supporting memorandum. The Court will combine claims two and three for purposes of this analysis.

   1.  *Denial of Brinson's Motion Requesting New Counsel*

In his § 2255 motion, Brinson is presumably alleging the Magistrate Judge erroneously

---

[2] Notably, the Government failed to address this claim in their response.

7

denied his motion for new counsel, thus depriving him of effective assistance of counsel. Several days after Brinson filed a notice of his intent to plead guilty, but prior to the hearing during which he entered his guilty pleas, Brinson directed his attorney to file a motion for new counsel (Criminal Court File No. 21).

Magistrate Judge Carter subsequently conducted a hearing on Brinson's request to replace counsel. When asked what his problem was with counsel, Brinson responded:

> Right now I'm on medication, and from what my thinking ability is going about my case, there's a lot of things about my case that Mr. Martinez and the investigator didn't know, and there's a lot of situations in my case that nobody has investigated. I've been told – well, being asked by Martinez without due consideration of any advice should I go to trial with this or should I go ahead and take a plea and without the full knowledge of lawyer in-depth situations in my case, I don't' think that was right to come at me with a plea, which he don't know the certain situations of my case that I didn't do it.
>
> I said I did, and that's what's making my case. That's the only thing that's basically making my case is my confession. My confession was under duress. I don't know if I was thinking fairly or not of Mr. Martinez because of the lack of advice - -

(Criminal Court File No. 70). During the hearing, there was a discussion that, although Brinson had filed a Notice to Intent to Plead Guilty, he still could proceed to a jury trial if such was his desire. Brinson explained, however, "[it]s not necessarily the decision of taking my case to trial." Brinson admitted he had not yet decided how he wished to proceed. During the hearing Brinson was unable to articulate any legitimate reason why his current counsel should be replaced, alleging only that he wanted to tell counsel more about his case before he decided whether to plead guilty or proceed to trial. The Magistrate Judge concluded Brinson had not presented any good cause to replace his lawyer (Criminal Court File No. 70).

Although Brinson faults the magistrate judge for denying his initial motion, he fails to identify facts that he claims he presented during the hearing which required the granting of his

8

motion. "The Sixth Amendment provides a criminal defendant with the right 'to have the Assistance of Counsel for his defence.' An essential element of this right is the right to have counsel of one's choice." *United States v. Mooneyham*, 473 F.3d 280, 291 (6th Cir. 2007), (citing *United States v. Gonzalez-Lopez*, 548 U.S. 140 (2006)). The right to counsel of choice, however, is not absolute as "[a]n indigent defendant has no right to have a particular attorney represent him and therefore must demonstrate "good cause" to warrant substitution of counsel." *Id.* (quoting *United States v. Iles*, 906 F.2d 1122, 1130 (6th Cir. 1990). A court's decision regarding an indigent defendant's motion for substitution for counsel will be reversed only when a deciding court abused its discretion. When deciding whether a lower court abused its discretion, the appellate court will consider, among other things, "whether the conflict between the attorney and client was so great that it resulted in a total lack of communication preventing an adequate defense." *Id.* at 291 (citations omitted).

The record clearly reflects that Brinson failed to "demonstrate 'good cause' to warrant substitution of counsel." *United States v. Iles*, 906 F.2d 112, 1130 (6th Cir. 1990). The magistrate judge conducted a hearing on the motion to change counsel, all interested parties were present, including Brinson, but his only complaint was that counsel presented the government's plea offer before Brinson had provided him counsel with all of the details of his case. Such a claim is insufficient to satisfy the threshold requirement of demonstrating "good cause" to warrant substitution of counsel. Thus, absent a showing of good cause during the hearing, a substitution of counsel was not warranted.

Accordingly, because Brinson did not articulate a legitimate reason for obtaining new counsel during the hearing, §2255 relief is **DENIED** on his claim that his motion to substitute

9

counsel was erroneously denied.

## 2. Involuntary Guilty Plea

Turning to the second and third grounds raised in his § 2255 motion, Brinson alleges counsel coerced him into taking a guilty plea by telling him he would not receive a sentence in the high end of the guidelines. In addition, he contends his guilty plea was involuntary because he did not understand to what he was pleading or the results of his plea (Criminal Court File No. 62, p. 6-7). Notably, Brinson fails to support these self-serving claims with any factual support. For example, Brinson does not reveal the contents of the conversation he allegedly had where counsel told him he would not receive a sentence in the high end, his understanding from counsel of the sentence he expected to receive, or identify the guideline range which they discussed. Likewise, he does not reveal the conversation he had with counsel regarding the crimes to which he was pleading guilty or his understanding of the consequences of his guilty plea. Brinson has not explained what he did and did not understand at the time of the plea.

Consequently, Brinson has insufficiently pled these claims since he has failed to provide any factual support as required by Rule 2 of the Rules Governing Section 2255 Proceedings for the United States District Courts. There is no factual proof before the Court to support these claims, there are only factually unsupported self-serving allegations. Accordingly, Brinson is not entitled to § 2255 relief on his factually unsupported claims that trial counsel coerced him into pleading guilty and that his plea was involuntary as it violated Rule 2.

Assuming for the sake of discussion that the claims are adequately pled, Brinson has failed to demonstrate his plea was coerced or involuntary. The transcript of the statements made by Brinson under oath, rebut the claims he now advances. As to his claim that he pleaded guilty

because counsel told him he would not receive a sentence in the high end of the guidelines (coerced guilty plea claim) the record reveals the Court clearly advised him he was subject to receive a sentence anywhere between the low and high ends of the statutorily mandated sentences; thus, Brinson knew what possible sentences he was facing prior to entering his pleas. More importantly, the Court advised Brinson that, at that time, no one knew what his guideline range or sentence would be and that such a determination would be made by the Court at the sentencing hearing. If Brinson was under the impression his sentencing guidelines were already determined and he would be sentenced at the low end of the guidelines range, that was the time for him to address it with the Court. The record reflects Brinson actively participated in the colloquy, asking questions when he did not understand something or when he wanted something repeated.

During the plea hearing, the Court had the government advise Brinson to the possible penalties during his rearraignment proceedings. The government explained:

> Count 1 carries a maximum term in prison of 20 years, supervised release of up to three years. And Count 2 carries a mandatory-minimum term in prison of seven years to a maximum of life, which would run consecutive to all other terms of imprisonment imposed, five years supervised release. And Count 3 carries a maximum term in prison of 10 years, supervised release of at least three years, and unless the defendant is determined to be an armed career criminal in which there is a mandatory minimum term of 15 years up to a maximum of life, and five years supervised release.

(Criminal Court File No. 35, pp. 14-15). Then the following colloquy took place:

THE COURT: All right. Mr. Brinson, I'm sure that you've probably discussed these matters with Mr. Martinez as well, is that correct?

THE DEFENDANT: Yes.

THE COURT: Okay. And knowing what the possible penalties are here, do you still want to plead guilty?

THE DEFENDANT: Right now at this stage I'm really confused because all of the

11

|   |   |
|---|---|
|   | maximums wasn't explained to me like that. It was explained something differently. I don't know what to do now. |
| THE COURT: | Well, now you know what they are, so do you want to plead guilty or not? |
| THE DEFENDANT: | Yes, sir. |

(Criminal Court File No. 35, p. 15). The conversation continued and Brinson affirmed that he and counsel had discussed the Federal Sentencing Guidelines and he understood the guidelines provide a certain range within which the Court could sentence him. Brinson further affirmed that he understood that neither his guidelines nor his sentence would be known until he actually appeared in Court for sentencing. Therefore, even if counsel told Brinson he would not receive a sentence in the high end of the guidelines, the Court clearly told him no one knew his guidelines or sentence at the time he pleaded guilty.

Brinson's claims that he pled guilty based upon counsel's promise that he would not receive a sentence in the high end of the guidelines, he did not understand to what he was pleading, and he did not understand the consequences of his guilty plea are directly contradicted by the explanation provided during his guilty plea hearing. Brinson was clearly advised and affirmed, in open court, that he understood the statutory sentencing range, the charges to which he was pleading, and the consequences of his plea (Criminal Court File No. 35). The Court specifically identified each charge against Brinson and explained each element the government must prove before he could be convicted of the crime and each constitutional right he was waiving by entering a guilty plea (Criminal Court File No. 35, pp. 5-14). The terms and consequences of entering a guilty plea were clearly explained to Brinson in open court on the record. The alleged promise made by counsel now cited by Brinson was not mentioned, even though Brinson was specifically asked whether anyone had forced or compelled him in any way to plead guilty (Criminal Court File No. 35, p. 8).

Although Brinson actively participated in the hearing, even telling the Court that counsel had explained his sentencing exposure differently, he never mentioned what he now alleges, i.e., that counsel said he would not be sentenced at the high end of the guidelines. The Court explained and Brinson agreed that the specific sentence was unknown and that the Court would make that determination at his sentencing hearing.

The Sixth Circuit has held:

> To allow defendant to attempt to prove by affidavit that the agreement is otherwise than it appears, unambiguously, on a thorough record would violate established contract-law standards. The Court holds therefore that where Rule 11 procedures were fully adequate, absent extraordinary circumstances, or some explanation of why defendant did not reveal other terms, at least when specifically asked to do so by the court, a defendant's plea agreement consists of the terms revealed in open court....

*Warner v. United States,* 975 F.2d 1207, 1212 -1213 (6th Cir. 1992). By analogy, Brinson's plea consists of the terms as explained by the Court in his plea hearing.

"Where the court has scrupulously followed the required procedure, the defendant is bound by his statements in response to the court's inquiry." *United States v. Todaro*, 982 F.2d 1025, 1030 (6th Cir.), *cert. denied*, 508 U.S. 943 (1993), *Baker v. United States*, 781 F.2d 85, 90 (6th Cir.), *cert. denied*, 479 U.S. 1017 (1986) (quoting *Moore v. Estelle*, 526 F.2d 690, 696-97 (5th Cir.), *cert. denied*, 426 U.S. 953 (1976)). This Court scrupulously followed the Rule 11 procedure and Brinson is bound by his sworn statements he made in response to the Court's inquiry under Rule 11. *Warner v. United States*, 975 F.2d 1027, 1212 (6th Cir. 1992), *cert. denied*, 507 U.S. 932 (1993).

> [T]he representations of the defendant, his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

13

*Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). Thus, where the defendant "was fully aware of the likely consequences when he pleaded guilty[,] it is not unfair to expect him to live with those consequences[.]" *Mabry v. Johnson,* 467 U.S. 504, 511 (1984), *abrogated in part on other grounds*, *Puckett v. United States,* 556 U.S. 129 n. 1 (2009). Fed. R. Crim. P. 11 requires the Court to ask the defendant certain questions which creates a record that can be relied upon to insulate the guilty plea in any future appeals and collateral attacks. *Key v. United States*, 806 F.2d 133, 136 (7th Cir. 1986). Rule 11 ensures a colloquy that exposes the defendant's state of mind through personal interrogation.

Here, the colloquy that occurred between the Court and Brinson clearly refutes his allegations that he did not enter a voluntary, knowing, and intelligent plea. The record in this case clearly reveals that Brinson's plea was knowing and voluntary. Brinson affirmed in open court that he understood the consequences of his guilty plea; he understood his sentencing exposure; and he voluntarily chose to plead guilty rather than go to trial. The record does not reveal any promise made by counsel to Brinson or other impropriety in the administration of the plea agreement. There is nothing in the record indicating that Brinson did not understand to what he was pleading guilty, the consequences of entering a guilty plea, or the possible sentence he was facing. Therefore, Brinson is not entitled to an evidentiary hearing on his claim he was coerced into pleading guilty or his claim that his plea was involuntary. If the Court were to allow an evidentiary hearing on these claims, it would undermine and eliminate the chief virtues of the plea bargain process -- speed, economy, and finality. *Blackledge*, 431 U.S. at 71-72. To permit collateral attacks on guilty pleas to be based on mere self-serving claims without specific factual support would make every guilty plea subject to attack under § 2255 and render the oral responses given by a defendant pursuant to Rule 11 meaningless. *Blackledge*, 431 U.S. at 74.

In sum, Brinson has failed to provide any credible evidence that he was coerced into pleading guilty with the promise of a sentence at the low end of the guidelines, did not understand the charges to which he was pleading, or did not understand the result of doing so. Accordingly, Brinson is not entitled to any § 2255 relief on his claims that his plea was involuntary and coerced.

### 3. Counsel's Alleged Failure to Investigate Duress

In his supporting memorandum of law, Brinson adds a claim that he received ineffective assistance of counsel when counsel's strategic decisions harmed his case, violated his constitutional rights, and resulted in his involuntary guilty plea (Criminal Court File No. 65). Brinson claims he told counsel "I was told to do this, or get hurt along with his family" (Criminal Court File No. 65, p. 2). In addition, he claims counsel failed to listen to "the 911 taped calls my wife had made before the criminal conduct I was forced to do " (Criminal Court File No. 65, p. 2). In support of this claim, Brinson cites to *United States v. Contento-Pachon*, 723 F.2d 691 (9th Cir. 1984) and other cases discussing the defense of duress. *Contento-Pachon* held "that a defendant who has acted under a well-grounded fear of immediate harm with no opportunity to escape may assert the duress defense, if there is a triable issue of fact whether he took the opportunity to escape the threatened harm by submitting to authorities at the first reasonable opportunity." *Id.* at 694. As explained below, Brinson presents no credible factual evidence that he acted under an immediate threat of serious bodily injury with no opportunity to escape, or that he surrendered to authorities at the first reasonable opportunity. Indeed, the record reflects that after he committed the robbery, he gave the money to a drug dealer to whom he owed money and then returned home (PSI, p. 5, ¶ 6). The Sixth Circuit has established a five-element test for establishing an affirmative defense of duress:

> 1) that defendant was under an unlawful and present, imminent, and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury; (2) that the defendant had not recklessly or negligently placed himself

15

in a situation in which it was probable that he would be forced to choose the criminal conduct; (3) that the defendant had no reasonable, legal alternative to violating the law, a chance both to refuse to do the criminal act and also to avoid the threatened harm; (4) that a direct causal relationship may be reasonably anticipated between the criminal action taken and the avoidance of the threatened harm; [and] (5) that defendant did not maintain the illegal conduct any longer than absolutely necessary.

*United States v. Shemami*, 425 Fed.Appx. 425, 427 (6th Cir. 2011) (quoting, *United States v. Johnson*, 416 F.3d 464, 468 (6th Cir. 2005). A defendant is required to present credible evidence of each element of the test in order to present the defense to the jury. If the defendant's evidence "supporting one element is insufficient to sustain it even if believed, the trial court and jury need not be burdened with testimony supporting other elements of the defense." *Id*. (quoting *United States v. Bailey,* 444 U.S. 394, 416 (1980)) (internal quotations omitted)). In other words, "offering evidence of the defense is proper 'if the defendant produces evidence upon which a reasonable jury could conclude by a preponderance of the evidence that each of the ... five requirements is met.'" *Id.* (quoting *United States v. Ridner*, 512 F.3d 846, 850 (6th Cir.2008)).

"If the defendant committed the offense because of *serious* coercion, blackmail or duress, under circumstances not amounting to a complete defense, the court may depart downward." United States Sentencing Guidelines ("USSG") § 5K2.12 (emphasis added). Therefore, although the evidence may be insufficient to amount to a complete defense, if the evidence sufficiently demonstrates a serious degree of coercion or duress, a defendant may receive a downward departure under § 5K2.12.

The Court discerns Brinson is claiming his plea was involuntary as a result of counsel's ineffectiveness in failing to investigate and present the duress defense. The Court begins with the presumption that counsel's actions were reasonable and this presumption extends to counsel's strategic decisions. *See Strickland*, 466 U.S. at 689. The Supreme Court has provided the following

instructions to assist in analyzing a claim challenging counsel's duty to investigate:

> [S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.
>
> The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information. For example, *when the facts that support a certain potential line of defense are generally known to counsel because of what the defendant has said, the need for further investigation may be considerably diminished or eliminated altogether.* And when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable. In short, inquiry into counsel's conversations with the defendant may be critical to a proper assessment of counsel's investigation decisions, just as it may be critical to a proper assessment of counsel's other litigation decisions.

*Strickland v. Washington*, 466 U.S. at 690-69 (emphasis added).

Brinson contends he advised counsel he was told to do this or get hurt along with his family. Brinson also claims he asked counsel to obtain the 911 tapes where his wife called just prior to him committing this offense. Counsel, however, allegedly told him there was no defense and it would be better to plead guilty and receive the three point reduction for acceptance of responsibility (Criminal Court File No. 65). Brinson contends he then filed his motion to substitute counsel. Notably, Brinson did not present these claims to the Magistrate Judge when he conducted a hearing on Brinson's motion to substitute counsel (Criminal Court File No. 70, Transcript).

Although Brinson fails to provide details of the conversation he had with counsel regarding

17

the duress defense, the record clearly indicates Brinson and counsel discussed this defense and, according to Brinson, counsel advised him that he would fare better by pleading guilty since he admitted he committed the crime. Thus, it is apparent that he and counsel discussed the potential duress defense and based on the information provided by Brinson, counsel determined it was not viable and further investigation was unnecessary. Brinson does not provide the specific substance of the alleged threats, the identity of the people making the threats, or the circumstances surrounding the alleged threats, i.e., when they were made, where they were made, who made them, or who was present at the time they were made. In addition, although Brinson faults counsel for failing to listen to the 911 tapes, he fails to inform the Court of the details of the tape or explain how they would have any effect on his case. Consequently, Brinson has failed to provide sufficient facts to demonstrate further investigation was necessary or that counsel's advice was unreasonable.

Brinson made similar general arguments during his sentencing and re-sentencing hearing. Brinson's story that he was threatened by some unnamed drug dealers was uncorroborated at sentencing and remains so today. Construing Brinson's factually unsupported claims of duress liberally, his claims, though very weak, provide some indication of duress. Nevertheless, Brinson has not produced evidence demonstrating a "serious" degree of coercion or duress, as § 5K2.12 requires. Although the Court acknowledges that Brinson does not have to demonstrate all of the elements of duress defense to receive a § 5K2.12 departure, he must present credible evidence that he was subjected to serious duress. Brinson simply has not proffered any credible factual evidence to warrant a departure under § 5K2.12 or demonstrating a viable duress defense. Thus, he has failed to proffer any evidence sufficient to rebut the presumption that counsel's performance and advice were reasonable, as there is no credible proof indicating further investigation would have been likely to make any difference in his plea or sentencing. In addition, even assuming counsel performed

deficiently in failing to investigate a duress defense, Brinson has failed to demonstrate that he suffered prejudice under the *Hill v. Lockhart* standard.

Accordingly, Brinson is **DENIED** § 2255 relief on his claim that counsel's failure to investigate a duress defense amounted to ineffective assistance which resulted in his involuntary guilty plea.

### 4. *Jurisdiction*

In his final claim, Brinson questions whether the Court "imposed a sentence in excess of that permitted by the entry of his guilty plea in violation of the 5th and 6th Amend.[,]" and whether the facts admitted by him "satisfy the Federal Jurisdictional element requiring that the conduct affect interstate commerce when the conduct resulted in the theft of the $100.00 from the person of the restaurant after the restaurant had closed. (Criminal Court File No. 62). The government responds that Brinson "has borrowed these claims *verbatim* from the brief filed by counsel on his behalf on direct appeal" (Criminal Court File No. 72). The Sixth Circuit affirmed Brinson's judgment of conviction before reversing and remanding his case for sentencing in accordance with *Booker* (Criminal Court File No. 36). Thus, Brinson cannot utilize a § 2255 motion to relitigate the same issues that were presented and decided on direct appeal absent exceptional circumstances, e.g., actual innocence or an intervening retroactive change in the law. *Wright v. United States*, 182 F.3d 458, 467 (6th Cir. 1999). Brinson has not made a viable claim of actual innocence and there is no intervening retroactive change in the applicable law.

Assuming Brinson is challenging his re-sentencing, which he apparently did not raise on appeal, he is entitled to no relief here as that is the type of claim that can be fully and completely addressed on direct review based on the record created at the plea colloquy and sentencing hearing. Thus, any failure to raise this clam or direct appeal results in procedural default. "Where a

19

defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent'" *Bousley v. United States,* 523 U.S. 614, 622 (1998) (internal punctuation and citations omitted)). Brinson offers no explanation for his default. Because Brinson has not established cause for his default, or demonstrated that the alleged error "probably resulted in the conviction of one who is actually innocent[,]" *Murray v. Carrier*, 477 U.S. 478, 496 (1986), no § 2255 relief is warranted.

In sum, Brinson has shown no exceptional circumstances which permits this Court to revisit an issue raised on direct appeal nor, to the extent any part of the claim was not raised on direct appeal, has he shown cause and prejudice or actual innocence to excuse his procedural default. Accordingly, the claim will not be reviewed.

## V. Conclusion

Brinson has failed to establish a plausible claim that would warrant an evidentiary hearing. *See United States v. Tarricone*, 996 F.2d 1414, 1417-18 (2nd Cir. 1993) (noting that to prevail on a motion for hearing, petitioner must establish he has a plausible claim). The motion filed by federal prisoner Samuel Brinson for post-conviction relief pursuant to 28 U.S.C. § 2255 shall be **DENIED and DISMISSED WITH PREJUDICE** (Criminal Court File No. 62) .

A separate judgment will be entered.

　　　　　　　　　　　　　　　　 */s/ R. Allan Edgar*　　　　　　
　　　　　　　　　　　　　　　　 R. ALLAN EDGAR
　　　　　　　　　　　　　　　 UNITED STATES DISTRICT JUDGE